**07-CV-00411-MAN**

*C07-411*
*C07-453*
*C07-454*
*C07-455*
*C07-457*

BEFORE THE JUDICIAL PANEL
ON MULTIDISTRICT LITIGATION

FILED
LODGED
RECEIVED          MAIL

APR 19 2007

CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
BY                          DEPUTY

| | |
|---|---|
| IN RE MENU FOODS POISONED PET FOOD LITIGATION | No. MDL DOCKET NO. 1850 |

**MEMORANDUM OF PLAINTIFFS WHALEY *et al.* IN OPPOSITION TO MOTIONS FOR TRANSFER AND CONSOLIDATION OF RELATED ACTIONS SUBMITTED BY PLAINTIFFS SEXTON AND TROIANO**

Under Rule 7.2(a) of the Rules of Procedure and 28 U.S.C. § 1407, Plaintiffs Tom Whaley, Stacey Heller, Toinette Robinson, David Rapp, Cecily and Terrence Mitchell, Suzanne E. Johnson, Craig R. Klemann, Audrey Kornelius, Barbara Smith, Michele Suggett and Don James (the "Whaley Plaintiffs") submit this memorandum of law in opposition to two motions to transfer and consolidate related actions, submitted by plaintiff Shirley Sexton and by plaintiff Christina Troiana.

## I.    INTRODUCTION

The federal statute, 28 U.S.C. § 1407, permits transfer and consolidation of related civil actions when three express conditions are met: First, the related civil actions must involve "one or more common questions of fact." Second, transferring and consolidating these actions must facilitate the "convenience of the parties and witnesses," and third, it must also "promote the just and efficient conduct of such actions." *Id.* All moving plaintiffs agree that all of these

- 1 -

Dockets.Justia.com

requirements are met with respect to the related actions. The only disputed issue is whether the related actions should be transferred and consolidated in (i) the Western District of Washington, as the Whaley Plaintiffs propose; (ii) the District of New Jersey, as the *"Pittsonberger* Plaintiffs" propose; (iii) the Central District of California, as proposed by plaintiffs Shirley Sexton; or (iv) the Southern District of Florida, as plaintiff Christina Troiano proposes. Because this litigation has no "center of gravity" in any forum in this country, the related actions should be transferred to a district that can handle the scores of related actions capably and expeditiously. The Western District of Washington has ample experience – and resources to spare – to oversee this litigation.

## II.   ARGUMENT

### A.   The Western District of Washington Will Be a Just and Efficient Venue For Litigating All Related Actions

As the Whaley Plaintiffs explained in their brief supporting their motion to transfer, the Western District of Washington has a capable and efficient bench. To this we add that it is also underrepresented in terms of assigned MDLs. The District of New Jersey, where 26 cases filed largely by a revolving group of four firms, currently has 15 pending MDLs. The Central District of California has nine pending MDLs. The Western District of Washington (and the Southern District of Florida) have just one. *See Distribution of Pending MDL Dockets*, Exhibit A, at 1, 3, 5, 10 (attached hereto). Many of the judges in the Central District of California and District of New Jersey have multiple MDL actions.

While the Western District of Washington and the Southern District of Florida have been equally underutilized as an MDL transferee forum, we note that the Florida district is relatively disadvantaged by its crushing criminal docket – 6716 criminal felony filings in 2006 versus only 474 in the Western District of Washington. *See* Exhibits D and H attached to Plaintiffs' Memorandum of Law in Support of Their Motion For Transfer and Consolidation of Related Actions to the Western District of Washington, filed March 29, 2007. This, of course, is

- 2 -

pertinent because criminal defendants' constitutional right to a speedy disposition can disrupt civil-litigation calendars by displacing scheduled civil trials and hearings. The Western District of Washington's smaller criminal docket poses a correspondingly smaller risk of displacement.

The judges of the Western District should have the opportunity to participate in MDL actions. The *Whaley* case is assigned to the Honorable Ricardo S. Martinez, who has nine years experience on the federal bench, first as a district-court magistrate, then as district-court judge. He is a seasoned candidate to handle a defective product MDL. A judge's experience with an MDL usually has positive benefits to the district in terms of knowledge that comes from handling an MDL that is then passed on to litigants and other judges handling other complex cases in the district.

**B.    Due to The International Scope of Defendant's Manufacturing Misconduct, No Single District Is More Convenient Than Others**

Plaintiffs Pittsonberger, Sexton and Troiano erroneously assert, respectively, that the District of New Jersey, the Central District of California, and the Southern District of Florida are more convenient for likely witnesses. First, in light of Menu Food's multinational business operations reaching from China to Ontario, Canada, to various pet-food processing and distributing plants scattered about the United States, it is unlikely that all witnesses, or even a substantial majority, will be located in any one jurisdiction. Urging transfer to the District of New Jersey, Pittsonberger asserts that one of the defendants, Menu Foods, Inc., is located in and has a processing plant in New Jersey. But even if so, that entity is merely a subsidiary of Ontario, Canada-based Menu Foods Limited, and only one of several at that. More importantly, Pittsonberger also alleges that it was Ontario-based Menu Foods Income Fund – not Menu Foods Inc. – that "manufactured the pet food at issue in this action." *Pittsonberger* Class Action Complaint ¶ 9. *See* Ex. B hereto. *Pittsonberger* thus alleges that "[t]he events complained of occurred throughout the United States," as well as in New Jersey. *Id.* ¶ 10. Discovery in this case hence will not focus on New Jersey-based conduct. Witness convenience thus does not

- 3 -

favor the District of New Jersey, and certainly not the Central District of California or the Southern District of Florida.

Second, it is probable – indeed almost certain – that all or almost all documents produced in connection with the litigation will be produced electronically. The situs of these documents is thus wholly irrelevant.

Third, "since the parties and witnesses ordinarily do not attend pretrial conferences or hearings, it is unlikely that any of the named plaintiffs or putative class members will ever be required to travel to the transferee forum for pretrial purposes under Section 1407. And under the provisions of Fed. R. Civ. P. 45(d)(2), depositions of witnesses will probably occur in proximity to where they reside." *In re Hawaiian Hotel Room Rate Antitrust Litig.*, 438 F. Supp. 935, 936-37 (J.P.M.L. 1977) (transferring and consolidating all related actions in Hawaii, notwithstanding arguments that most witnesses reside in the continental United States). There is thus no viable argument that witnesses will be inconvenienced if these related actions are litigated in the Western District of Washington.

## C.    The Proliferation of Redundant Complaints Filed in New Jersey by a Select Group of Firms Does Not Tip Transfer in Favor of New Jersey

Pittsonberger also contends that the sheer number of related actions filed in New Jersey tips the balance in favor of transferring all related actions to the District of New Jersey. But any inference that this number indicates New Jersey has a heightened interest in this litigation or would be more convenient for the parties would be incorrect. Pittsonberger does not mention that the New Jersey actions were filed by a small, revolving group of local law firms.[1] The Panel should give little weight in this motion to those firms' effort to inflate the number of related actions filed in their home jurisdiction.[2]

---

[1] Chief among those firms are Lite DePalma Greenberg & Rivas, LLC (12 actions), Kaplan Fox & Kilsheimer LLP (four actions), and Trujillo Rodriquez & Richards, LLC (four actions).

[2] The *Whaley* Plaintiffs noted in their opening brief that five related actions with 12 plaintiffs were filed in the Western District of Washington. But they also indicated that this did not change the facts that the parties' location

- 4 -

### III.    CONCLUSION

For the reasons set forth above and in the Whaley Plaintiffs' opening brief, this Panel should transfer all related actions in this matter to the Western District of Washington for consolidated or coordinated proceedings.

DATED:  April 18, 2007

HAGENS BERMAN SOBOL SHAPIRO LLP

By_____
    Steve W. Berman
1301 Fifth Avenue, Suite 2900
Seattle, WA  98101
(206) 623-7292
steve@hbsslaw.com

MYERS & COMPANY, P.L.L.C.
Michael David Myers
1809 Seventh Avenue, Suite 700
Seattle, Washington  98101
Telephone:  (206) 398-1188
Facsimile:  (206) 400-1112
E-mail:  mmyers@myers-company.com

Philip H. Gordon
Bruce S. Bistline
Gordon Law Offices
623 West Hays St.
Boise, ID  83702
Telephone:  (208) 345-7100
Facsimile: (206) 623-0594
E-mail:  pgordon@gordonlawoffices.com

---

was a neutral factor to selecting a transferee court and that "[n]o particular district court is more conveniently located for the parties ... than another." *See Whaley* Br. at 11.

Adam P. Karp
Animal Law Offices of Adam P. Karp
114 W. Magnolia St., Ste. 425
Bellingham, WA 98225
Telephone: (360) 738-7273
Facsimile (360) 392-3936
Email: adam@animal-lawyer.com

*Attorneys for Plaintiffs Tom Whaley, Stacey
Heller, Toinette Robinson, David Rapp, Cecily
and Terrence Mitchell, Suzanne E. Johnson,
Craig R. Klemann, Audrey Kornelius, Barbara
Smith, Michele Suggett and Don James*

- 6 -

# EXHIBIT A

## DISTRIBUTION OF PENDING MDL DOCKETS
### (AS OF MARCH 12, 2007)

| District | Judge | Litigation | Actions Pending | Total Number of Actions |
|---|---|---|---|---|
| ARE | D.J. William R. Wilson, Jr. | MDL-1507 In re Prempro Products Liability Litigation | 3,377 | 4,027 |
| AZ | Sr.J. Paul G. Rosenblatt | MDL-1541 In re Allstate Insurance Co. Fair Labor Standards Act Litigation | 4 | 5 |
| | Sr.J. Roger G. Strand | MDL-972 In re Diamond Benefits Life Insurance Company & American Universal Insurance Company Contracts Litigation | 1 | 10 |
| CAC | D.J. David O. Carter | MDL-1807 In re Wachovia Securities, LLC, Wage and Hour Litigation | 19 | 19 |
| | D.J. Dale S. Fischer | MDL-1822 In re Bluetooth Headset Products Liability Litigation | 14 | 14 |
| | D.J. A. Howard Matz | MDL-1610 In re Conseco Life Insurance Co. Cost of Insurance Litigation | 19 | 21 |
| | Sr.J. Mariana R. Pfaelzer | MDL-1574 In re Paxil Products Liability Litigation | 39 | 148 |
| | D.J. Manuel L. Real | MDL-1601 In re StarMed Health Personnel, Inc., Fair Labor Standards Act Litigation | 3 | 6 |
| | D.J. Manuel L. Real | MDL-1737 In re American Honda Motor Co., Inc. Oil Filter Products Liability Litigation | 5 | 5 |
| | D.J. Christina A. Snyder | MDL-1671 In re Reformulated Gasoline (RFG) Antitrust & Patent Litigation | 11 | 12 |
| | C.J. Alicemarie H. Stotler | MDL-1803 In re Banc of America Investment Services, Inc., Overtime Pay Litigation | 5 | 5 |
| | Sr.J. Dickran M. Tevrizian, Jr. | MDL-1475 In re Heritage Bonds Litigation | 9 | 9 |
| | D.J. Stephen V. Wilson | MDL-1745 In re Live Concert Antitrust Litigation | 22 | 22 |
| CAN | D.J. Saundra Brown Armstrong | MDL-1781 In re Cintas Corp. Overtime Pay Arbitration Litigation | 71 | 71 |
| | D.J. Saundra Brown Armstrong | MDL-1809 In re Terminix Employment Practices Litigation | 2 | 2 |
| | D.J. Charles R. Breyer | MDL-1699 In re Bextra and Celebrex Marketing, Sales Practices and Products Liability Litigation | 1,520 | 1,704 |
| | D.J. Charles R. Breyer | MDL-1793 In re International Air Transportation Surcharge Antitrust Litigation | 100 | 101 |
| | D.J. Jeremy D. Fogel | MDL-257 In re Cable News Network and Time Magazine "Operation Tailwind" Litigation | 1 | 8 |
| | D.J. Jeremy D. Fogel | MDL-1654 In re Compression Labs, Inc., Patent Litigation | 10 | 10 |
| | D.J. Phyllis J. Hamilton | MDL-1486 In re Dynamic Random Access Memory (DRAM) Antitrust Litigation | 42 | 44 |
| | D.J. Martin J. Jenkins | MDL-1648 In re Rubber Chemicals Antitrust Litigation | 10 | 13 |
| | D.J. Marilyn Hall Patel | MDL-1369 In re Napster, Inc., Copyright Litigation | 1 | 19 |
| | D.J. Marilyn Hall Patel | MDL-1770 In re Wells Fargo Home Mortgage Overtime Pay Litigation | 4 | 4 |
| | D.J. Marilyn R. Walker | MDL-1606 In re Deep Vein Thrombosis Litigation | 53 | 78 |
| | C.J. Vaughn R. Walker | MDL-1791 In re National Security Agency Telecommunications Records Litigation | 48 | 48 |
| | C.J. Vaughn R. Walker | MDL-1527 In re Cisco Systems, Inc., Securities & Derivative Litigation | 1 | 2 |
| | D.J. James Ware | MDL-1665 In re Acacia Media Technologies Corp. Patent Litigation | 22 | 22 |
| | D.J. James Ware | MDL-1819 In re Static Random Access Memory (SRAM) Antitrust Litigation | 25 | 25 |
| | D.J. Claudia Wilken | MDL-1761 In re Ditropan XL Antitrust Litigation | 6 | 6 |
| | D.J. Jeffrey S. White | MDL-1423 In re Cygnus Telecommunications Technology, LLC, Patent Litigation | 15 | 30 |
| | D.J. Ronald M. Whyte | MDL-1754 In re Apple iPod nano Products Liability Litigation | 8 | 8 |

| District | JUDGE | LITIGATION | Actions Pending | Total Number of Actions |
|---|---|---|---|---|
| FLS | D.J. Federico A. Moreno | MDL-1334 In re Managed Care Litigation | 6 | 123 |
| GAN | D.J. Thomas W. Thrash, Jr. | MDL-1804 In re Stand 'n Seal Products Liability Litigation | 13 | 13 |
| GAS | C.J. William T. Moore, Jr. | MDL-1677 In re NovaStar Home Mortgage Inc. Mortgage Lending Practices Litigation | 3 | 3 |
| IAS | Sr.J. Ronald E. Longstaff | MDL-1733 In re Teflon Products Liability Litigation | 22 | 22 |
| ILN | Sr.J. Marvin E. Aspen | MDL-1425 In re Aimster Copyright Litigation | 11 | 11 |
| | Sr.J. Marvin E. Aspen | MDL-1715 In re Ameriquest Mortgage Co. Mortgage Lending Practices Litigation | 318 | 322 |
| | D.J. Elaine E. Bucklo | MDL-1784 In re McDonald's French Fries Litigation | 10 | 10 |
| | D.J. David H. Coar | MDL-1536 In re Sulfuric Acid Antitrust Litigation | 7 | 7 |
| | D.J. David H. Coar | MDL-1783 In re JP Morgan Chase & Co. Securities Litigation | 3 | 3 |
| | D.J. Mark R. Filip | MDL-1818 In re Citifinancial Services Incorporated Prescreened Offer Litigation | 5 | 5 |
| | D.J. Robert W. Gettleman | MDL-1350 In re Trans Union Corp. Privacy Litigation | 14 | 15 |
| | Sr.J. John F. Grady | MDL-986 In re "Factor VIII or IX Concentrate Blood Products" Products Liability Litigation | 103 | 356 |
| | Sr.J. John F. Grady | MDL-1521 In re Wireless Telephone 911 Calls Litigation | 10 | 10 |
| | Sr.J. John F. Grady | MDL-1703 In re Sears, Roebuck & Co. Tools Marketing and Sales Practices Litigation | 6 | 7 |
| | Sr.J. George W. Lindberg | MDL-1773 In re Air Crash Near Athens, Greece, on August 14, 2005 | 7 | 7 |
| | D.J. Charles R. Norgle, Sr. | MDL-1604 In re Ocwen Federal Bank FSB Mortgage Servicing Litigation | 64 | 65 |
| | D.J. Amy J. St. Eve | MDL-1778 In re Ocean Financial Corp. Prescreening Litigation | 5 | 5 |
| | D.J. James B. Zagel | MDL-899 In re Mortgage Escrow Deposit Litigation | 1 | 75 |
| | D.J. James B. Zagel | MDL-1392 In re General Motors Corporation Vehicle Paint Litigation (No. III) | 2 | 3 |
| ILS | C.J. G. Patrick Murphy | MDL-1562 In re General Motors Corp. Dex-Cool Products Liability Litigation | 6 | 11 |
| | C.J. G. Patrick Murphy | MDL-1748 In re Profiler Products Liability Litigation | 4 | 4 |
| INN | D.J. Rudy J. Lozano | MDL-1767 In re H&R Block Mortgage Corp. Prescreening Litigation | 3 | 3 |
| | C.J. Robert L. Miller, Jr. | MDL-1700 In re FedEx Ground Package System, Inc., Employment Practices Litigation (No. II) | 36 | 42 |
| INS | D.J. Sarah E. Barker | MDL-1373 In re Bridgestone/Firestone, Inc., Tires Products Liability Litigation | 23 | 819 |
| | D.J. David F. Hamilton | MDL-1313 In re AT&T Corp. Fiber Optic Cable Installation Litigation | 35 | 35 |
| | D.J. John D. Tinder | MDL-1727 In re COBRA Tax Shelters Litigation | 3 | 3 |
| KS | C.J. John W. Lungstrum | MDL-1468 In re Universal Service Fund Telephone Billing Practices Litigation | 63 | 68 |
| | C.J. John W. Lungstrum | MDL-1616 In re Urethane Antitrust Litigation | 30 | 30 |
| | D.J. Kathryn H. Vratil | MDL-1721 In re Cessna 208 Series Aircraft Products Liability Litigation | 7 | 7 |

| District | Judge | Litigation | Actions Pending | Total Number of Actions |
|---|---|---|---|---|
| MN | D.J. Michael J. Davis | MDL-1431 In re Baycol Products Liability Litigation | 1,392 | 9,044 |
|  | D.J. Donovan W. Frank | MDL-1708 In re Guidant Corp. Implantable Defibrillators Products Liability Litigation | 1,200 | 1,212 |
|  | Sr.J. Paul A. Magnuson | MDL-1328 In re Monosodium Glutamate Antitrust Litigation | 1 | 14 |
|  | Sr.J. Paul A. Magnuson | MDL-1724 In re Viagra Products Liability Litigation | 65 | 70 |
|  | C.J. James M. Rosenbaum | MDL-1726 In re Medtronic, Inc., Implantable Defibrillators Products Liability Litigation | 966 | 966 |
|  | D.J. John R. Tunheim | MDL-1396 In re St. Jude Medical, Inc., Silzone Heart Valves Products Liability Litigation | 30 | 57 |
| MOE | D.J. Jean C. Hamilton | MDL-1702 In re Air Crash Near Kirksville, Missouri, on October 19, 2004 | 6 | 11 |
|  | Sr.J. Stephen N. Limbaugh | MDL-1672 In re Express Scripts, Inc., Pharmacy Benefits Management Litigation | 9 | 12 |
|  | D.J. Catherine D. Perry | MDL-1811 In re LLRice 601 Contamination Litigation | 59 | 59 |
|  | D.J. Rodney W. Sippel | MDL-1736 In re Celexa and Lexapro Products Liability Litigation | 32 | 32 |
| MOW | D.J. Richard E. Dorr | MDL-1786 In re H&R Block, Inc., Express IRA Marketing Litigation | 21 | 21 |
| NCE | Sr.J. W. Earl Britt | MDL-1132 In re Exterior Insulation Finish System (EIFS) Products Liability Litigation | 1 | 109 |
| NCM | C.J. James A. Beaty, Jr. | MDL-1622 In re Cotton Yarn Antitrust Litigation | 9 | 9 |
| NCW | C.J. Richard L. Voorhees | MDL-1516 In re Polyester Staple Antitrust Litigation | 17 | 36 |
| NH | D.J. Paul J. Barbadoro | MDL-1335 In re Tyco International, Ltd., Securities, Derivative and "ERISA" Litigation | 13 | 101 |
| NJ | Sr.J. Harold A. Ackerman | MDL-1687 In re Ford Motor Co. E-350 Van Products Liability Litigation (No. II) | 5 | 5 |
|  | C.J. Garrett E. Brown, Jr. | MDL-1471 In re Compensation of Managerial, Professional and Technical Employees Antitrust Litigation | 4 | 4 |
|  | C.J. Garrett E. Brown, Jr. | MDL-1663 In re Insurance Brokerage Antitrust Litigation | 41 | 42 |
|  | D.J. Stanley R. Chesler | MDL-1658 In re Merck & Co., Inc., Securities, Derivative & "ERISA" Litigation | 2 | 35 |
|  | D.J. Stanley R. Chesler | MDL-1777 In re SFBC International, Inc., Securities & Derivative Litigation | 1 | 14 |
|  | Sr.J. Dickinson R. Debevoise | MDL-1337 In re Holocaust Era German Industry, Bank & Insurance Litigation | 2 | 59 |
|  | D.J. Joseph A. Greenaway, Jr. | MDL-1419 In re K-Dur Antitrust Litigation | 1 | 44 |
|  | Sr.J. John C. Lifland | MDL-1384 In re Gabapentin Patent Litigation | 1 | 1 |
|  | Sr.J. John C. Lifland | MDL-1479 In re Neurontin Antitrust Litigation | 15 | 17 |
|  | Sr.J. John C. Lifland | MDL-1730 In re Hypodermic Products Antitrust Litigation | 22 | 22 |
|  | D.J. Jose L. Linares | MDL-1763 In re Human Tissue Products Liability Litigation | 7 | 8 |
|  | D.J. William J. Martini | MDL-1514 In re Electrical Carbon Products Antitrust Litigation | 136 | 136 |
|  | D.J. Jerome B. Simandle | MDL-1292 In re Cendant Corporation Securities Litigation | 1 | 25 |
|  | Sr.J. William H. Walls | MDL-1550 In re IDT Corp. Calling Card Terms Litigation | 3 | 18 |
|  | D.J. Susan D. Wigenton | MDL-1799 In re Vonage Initial Public Offering (IPO) Securities Litigation | 4 | 5 |
|  | D.J. Freda L. Wolfson |  | 15 | 15 |

| District | Judge | Litigation | Actions Pending | Total Number of Actions |
|---|---|---|---|---|
| TXE | D.J. Leonard E. Davis | MDL-1512 In re Electronic Data Systems Corp. Securities & "ERISA" Litigation | 4 | 29 |
|  | D.J. T. John Ward | MDL-1530 In re Fleming Companies Inc. Securities & Derivative Litigation | 10 | 22 |
| TXN | C.J. A. Joe Fish | MDL-1578 In re UICI "Association-Group" Insurance Litigation | 15 | 28 |
|  | D.J. Sidney A. Fitzwater | MDL-1214 In re Great Southern Life Insurance Company Sales Practices Litigation | 1 | 25 |
| TXS | D.J. Vanessa D. Gilmore | MDL-1646 In re Testmasters Trademark Litigation | 1 | 6 |
|  | D.J. Melinda Harmon | MDL-1422 In re Waste Management, Inc., Securities Litigation | 1 | 7 |
|  | D.J. Melinda Harmon | MDL-1446 In re Enron Corp. Securities, Derivative & "ERISA" Litigation | 129 | 196 |
|  | D.J. Lynn N. Hughes | MDL-1609 In re Service Corporation International Securities Litigation | 1 | 4 |
|  | D.J. Janis Graham Jack | MDL-1810 In re MERSCORP Inc., et al., Real Estate Settlement Procedures Act (RESPA) Litigation | 19 | 19 |
| UT | D.J. Dale A. Kimball | MDL-1546 In re Medical Waste Services Antitrust Litigation | 1 | 8 |
| VAE | D.J. Leonie M. Brinkema | MDL-1705 In re Xybernaut Corp. Securities Litigation | 10 | 10 |
| WAW | D.J. Barbara Jacobs Rothstein | MDL-1407 In re Phenylpropanolamine (PPA) Products Liability Litigation | 402 | 3,365 |
| WVS | D.J. Joseph R. Goodwin | MDL-1477 In re Serzone Products Liability Litigation | 16 | 177 |
| WY | C.J. William F. Downes | MDL-1293 In re Natural Gas Royalties Qui Tam Litigation | 75 | 83 |

# EXHIBIT B

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

JAYME PITTSONBERGER,
on behalf of herself and
all others similarly situated,

                                       Civil Action No. _____

        Plaintiff,

        vs.

MENU FOODS INC., MENU
FOODS MIDWEST CORPORATION,
MENU FOODS INCOME FUND, and
MENU FOODS LIMITED,                         COMPLAINT - CLASS ACTION
                                        JURY TRIAL DEMANDED

        Defendants.

## CLASS ACTION COMPLAINT

Plaintiff, Jayme Pittsonberger, individually and on behalf of all others similarly situated, by and through her undersigned counsel, hereby brings this action against Defendants Menu Foods Inc., Menu Foods Midwest Corporation, Menu Foods Income Fund, and Menu Foods Limited (collectively, "Defendants") pursuant to Rule 23 of the Federal Rules of Civil Procedure, for breach of express warranty, breach of implied warranty of merchantability, negligence, unjust enrichment , and violation of New Jersey Consumer Fraud Act and seeks damages, attorneys' fees, and costs on behalf of herself and all others similarly situated (the "Class"), and upon information and belief, alleges as follows:

## NATURE OF THE ACTION

1.      Plaintiff brings this class action for breach of express warranty, breach of implied warranty of merchantability, negligence, unjust enrichment , and violation of New Jersey Consumer Fraud Act to redress the harms resulting from the manufacture, production, and sale

1

by Defendants of contaminated dog and cat food marketed under over 90 brand names.

    2.      Defendants manufacture and sell over 90 brands of pet food for cats and dogs, including popular labels like Iams and Eukanuba and private label brands sold at large retail chains. On March 16, 2007, the Menu Foods Income Fund issued a press release announcing the recall of 60 million cans of contaminated dog and cat food manufactured between December 3, 2006 and March 6, 2007. The recall covers the "cuts and gravy" style pet foods in cans and pouches manufactured at two of Menu Foods Limited's U.S. manufacturing facilities - Menu Foods, Inc. and Menu Foods Midwest Corporation, located in New Jersey and Kansas, respectively.

    3.      The defective pet food caused Plaintiff and Class members injury, in that Plaintiffs and the Class members purchased and fed defective pet food to their pets which caused injury to said pets in that they became ill through kidney disease, requiring veterinarians visits, medications, hospitalizations and, in some cases, burials of those pets that died due to renal failure caused by the contaminated pet food. Many pets that consumed the recalled tainted food now require ongoing monitoring of their health to ascertain the extent of the damage to their kidneys.

    4.      Plaintiff makes the following allegations, except as to the allegations specifically pertaining to Plaintiff and Plaintiff's counsel, based upon the investigation undertaken by Plaintiff's counsel, which included, inter alia, review and analysis of Defendants' website, press releases, news articles, and pleadings filed in other suits.

## PARTIES

    5.      Plaintiff Jayme Pittsonberger resides in Alexandria, Virginia. Plaintiff Pittsonberger purchased and fed her cat Nutro, Natural Choice pet food that was manufactured

2

by Defendants during the Class Period. Pittsonberger's cat, named Jada Katrina, became ill and was diagnosed with acute renal failure. Jada was immediately hospitalized at Caring Hands Animal Hospital. In addition to the cost of purchasing the contaminated food, Plaintiff Pittsonberger incurred economic costs in connection with the medical treatment and continued medical care and monitoring of her cat.

      6.     Defendant Menu Foods Inc. ("MFI") is a New Jersey corporation, with its headquarters at 9130 Griffith Mogan Lane, Pennsauken, NJ 08110. MFI has done business throughout the United States and in the State of New Jersey at all times relevant to this lawsuit. MFI manufactures pet food for distribution in the United States. MFI is a wholly-owned subsidiary of Menu Foods Limited, and is ultimately owned or controlled by Menu Foods Income Fund, an unincorporated company with its principal place of business in the Province of Ontario, Canada. Some of Defendant MFI's high managerial officers and agents with substantial authority are also high managerial officers or agents of Menu Foods Income Fund.

      7.     Menu Foods Limited ("MFL") is a Canadian corporation located at 8 Falconer Dr., Mississauga, ON , L5N IBI and has done business throughout the United States and in the State of New Jersey at all times relevant to this lawsuit. MFL is the parent company of, and wholly-owns, both MFI, located in Pennsauken, New Jersy, and MFMC located in Emporia, Kansas.

      8.     Defendant Menu Foods Midwest Corporation ("MFMC") is a Delaware corporation, with its headquarters at P.O. Box 1046, 1400 East Logan Ave., Emporia, KS 66801. MFMC has done business throughout the United States and in the State of New Jersey at all times relevant to this lawsuit. MFMC is a wholly-owned subsidiary of MFL and manufactures pet food for distribution in the United States.

3

9.     Defendant Menu Foods Income Fund ("MFIF"), an unincorporated company with its principal place of business in the Province of Ontario, Canada. MFIF manufactured the pet food at issue in this action.

10.    The events complained of occurred throughout the United States and in the State of New Jersey.

## JURISDICTION AND VENUE

11.    This Court has original jurisdiction over this class action under 28 U.S.C. §1332(d)(2), (d) (5)(B), (d) (6) because (i) there are 100 or more class members, (ii) there is an aggregate amount in controversy of at least $5,000,000, exclusive of interest and costs, and (iii) there is minimal diversity because at least Plaintiff and Defendants are citizens of different states.

12.    Venue in this Court is proper in that Defendants transacted business in this county and the conduct complained of occurred in this district, as well as elsewhere in New Jersey.

## FACTUAL ALLEGATIONS

13.    Defendants MFL and MFIF purport to be the leading North American private label/contract manufacturer of wet pet food products sold by supermarket retailers, mass merchandisers, pet specialty retailers, and other retail and wholesale outlets. In 2006, MFIF produced more than one billion containers of pet food.

14.    Defendant MFL is the parent company of, and wholly-owns, both Defendant MFI, located in Pennsauken, New Jersey, and Defendant MFMC, located in Emporia, Kansas. MFI and MFMC are two of MFL's manufacturing facilities in the United States.

15.    At least from December 3, 2006 through March 6, 2007, Defendants failed to adhere to proper safety standards and failed to ensure that the pet food they manufactured and

4

sold was free from contamination. More specifically, on March 16, 2007, Defendant MFIF, the parent company of MFL, issued a press release whereby it announced the recall of a portion of the dog and cat food manufactured between December 3, 2006 and March 6, 2007. The recall covers the "cuts and gravy" style pet foods in cans and pouches manufactured at two of MFL's facilities – MFI located in Pennsauken, New Jersey and MFMC in Emporia, Kansas.

16.     Reportedly, 60 million cans and pouches of the pet food were recalled.

17.     The recalled pet food was sold under more than 90 brand names, including popular labels like Iams and Eukanuba and private label brands sold at large retail chains. A list of all brand names that were recalled is contained on the Company's website and is attached hereto as Exhibit A. Retailers who sold the contaminated products include Ahold USA, Kroger Co., Safeway, Wal-Mart, Pet Smart, and Pet Value, among others.

18.     MFL acknowledged receiving complaints in the United States which raised concern about pet food manufactured since early December 2006, and its impact on the renal health of the pets consuming the products. The Company has discovered that timing of the production associated with these complaints coincides with the introduction of an ingredient from a new supplier.

19.     Stephen Sundlof, the Food and Drug Administration's (FDA) chief veterinarian, said that Menu Foods began its own taste tests of its pet food beginning February 27, 2007 in approximately 40 to 50 pets. Within a few days, animals began showing signs of sickness. In early March 2007, at least seven animals reportedly died.

20.     Menu Foods announced its recall weeks later, on March 16, 2007.

21.     The FDA has reported that it received numerous calls and complaints from owners of sick and deceased pets, who flooded phone lines at State FDA offices, as well as calls

from veterinarians and pet food companies. See Los Angeles Times, March 20, 2007.

22.    To date, there are 50 confirmed deaths. The FDA expects the death toll to rise.

23.    The FDA said that the investigation is focused on problems with aminopterin in the wheat gluten used by MFL, which MFL claimed had been coming from a new supplier. Wheat gluten is a source of protein and was used to thicken the gravy in the pet food.

24.    On March 30, 2007, the FDA announced that Defendants' recalled pet foods also contained melamine, a chemical used to make plastics. Researchers also found melamine (used to produce plastic kitchen wares and used in Asia as a fertilizer) in the urine of sick cats, as well as in the kidney of one cat that died after eating the Menu Foods' wet food. The Commissioner of the New York State Department of Agriculture and Markets noted that neither aminopterin nor melamine should be in pet food.

25.    On March 30, 2007, MFIF confirmed that on March 6, 2007 it had ceased using the Chinese company that supplied it with the contaminated wheat gluten.

## PLAINTIFF'S INJURIES

26.    Plaintiff Pittsonberger owned a cat named Jada Katrina. During February and March 2007, Plaintiff Pittsonberger fed her cat Nutro, Natural Choice pet food, now listed on the Company's recall list as contaminated products.

27.    Jada is a cat who is approximately 22 months of age. Until ingesting the contaminated pet food, Jada was in very good health and had no recent medical conditions.

28.    On Thursday, March 15, 2007, Plaintiff noticed that Jada had significantly increased thirst and water consumption, as well as urinary output. On the morning of March 17, 2007 she did not eat her breakfast meal. Jada was consuming more water and urinating more than usual, stopped eating, was listless, lethargic, had bad breath, and was sleeping more than

6

usual. Shortly after this, an e-mail notice from Plaintiff's veterinary hospital was sent regarding the food recall. Plaintiff immediately called and made an appointment for Jada to be seen the very next day.

29.     Plaintiff took Jada to Caring Hands Animal Hospital in Arlington, VA on Sunday, March 18, 2007. Jada underwent a physical exam was administered a urinalysis test. This was done via needle withdraw of urine directly from her bladder, which Jada remained conscious for and had to be physically restrained by two technicians while the veterinarian withdrew the urine. The tests showed unusual elements, and the veterinarian then suggested a more expensive, yet more-conclusive blood test. Jada was physically restrained while several samples of blood were taken to run tests. Being of petite stature, Jada has small blood vessels and thus had to be stuck several times to withdraw the appropriate amount of blood for the tests. Throughout the process, Jada appeared frightened and stressed.

30.     After review of the blood tests, Jada was diagnosed with acute renal failure. The veterinarian explained that Jada's BUN (blood urea nitrogen) and Creatinine levels were extremely high and she had to be admitted immediately for treatment. Jada was immediately admitted to Caring Hands Animal Hospital and intravenous fluids were administered. In addition to this, Jada was started on antibiotics and an appetite stimulant. On March 20th, more blood was drawn and further tests were run. Jada's BUN and creatinine levels had not come down to normal functioning levels. Jada stayed overnight at the clinic for three nights, for a total duration of 72 hours.

31.     Jada was released from Caring Hands Animal Hospital late in the evening of Wednesday, March 21st. Post discharge instructions included continuing treatment at home. It was instructed that Jada have 200 ml of fluid, injected subcutaneously every other day through

7

Wednesday, March 28th, when she was to return for additional follow-up testing. She was also

instructed to be placed on a special diet of 'renal failure' food that could only be acquired at the

time directly from the Caring Hands Animal Hospital. On March 28th, additional blood tests

were run to check renal activity. The results showed that her renal function levels were now

within normal function range. The doctor clearly stated that he was "cautiously optimistic" as

the full extent of the damage is still unknown. Jada still requires subcutaneous fluids every three

days for a month, at which time an additional full panel of tests will take place, as well as an

evaluation to determine if additional critical medical care is required.

## CLASS ACTION ALLEGATIONS

32.    Plaintiff brings this action on her own behalf and on behalf of all other persons

similarly situated.

33.    The class which Plaintiff seeks to represent are composed of:

All persons in the United States who have incurred costs as a result of their pets
becoming ill or passing away from ingesting any of the pet food brands
manufactured by Defendants during the period commencing December 3, 2006,
and ending March 6, 2007 (the "Class Period") that were recalled by Defendants.

34.    The class is composed of thousands, and possibly millions, of persons, the joinder

of whom is not practicable. The disposition of their claims in a class action will benefit both the

parties and the Court. It has been estimated that thousands of cats and dogs have become ill and

hundreds have died so far from ingestion of the contaminated pet food throughout the United

States during the Class Period, and thus the Class is sufficiently numerous to make joinder

impracticable, if riot impossible.

35.    There are questions of fact and law which are common to all members of the

class, including, inter alia, the following:

a.    Whether Defendants breached any express or implied warranties when they

8

manufactured and sold the contaminated pet food;

b.    Whether Defendants violated New Jersey's Consumer Fraud Act, N.J.S.A. 56:8-1, *et seq.*;

c.    Whether Defendants negligently manufactured and sold the contaminated pet food; and

d.    Whether the Class has been damaged, and if so, the appropriate measure of damages including the nature of the equitable relief to which the class is entitled.

36.    The above common issues of fact and law predominate over any arguable individualized issues.

37.    Plaintiff's claims are typical of the claims of the other members of the class because Plaintiff's and all of the Class members' damages arise from and were caused by having purchased and fed the contaminated pet food to their pets. As a result, the evidence and the legal theories regarding Defendants' alleged wrongful conduct are identical for Plaintiff and all of the Class members.

38.    Plaintiff will fairly and adequately protect the interests of the members of the Class, and Plaintiff has no interests which are contrary to or in conflict with those of the Class they seek to represent. Plaintiff has retained competent counsel experienced in class action litigation to further ensure such protection and to prosecute this action vigorously.

39.    The prosecution of separate actions by individual members of the class would create a risk of inconsistent or varying adjudications with respect to individual members of the class, which would establish incompatible standards of conduct for the party opposing the class and would lead to repetitious trials of the numerous common questions of facts and law. Plaintiff does not believe that any difficulty will be encountered in the management of this

9

litigation that would preclude its maintenance as a class action. Plaintiff believes and therefore

avers that claims are small in relation to the costs of an individual suit, and a class action is the

only proceeding pursuant to which Class members can, as a practical matter, recover. As a result

a class action is superior to other available methods for the fair and efficient adjudication of this

controversy.

40.    Proper and sufficient notice of this action may be provided to the Class members

through notice published in appropriate publications.

41.    Plaintiff and the members of the Class have suffered irreparable harm and

damages as a result of the Defendants' wrongful conduct as alleged herein. Absent

representative action, Plaintiff and the members of the Class will continue to suffer losses,

thereby allowing these violations of law to proceed without remedy.

## COUNT I
## BREACH OF EXPRESS WARRANTY

42.    Plaintiff incorporates by reference the preceding paragraphs as if they were fully

set forth herein.

43.    Defendants expressly warranted that the contaminated brands of pet food were, in

fact, ingestible food that was safe for consumption by dogs and cats.

44.    In addition, Defendants made numerous express warranties about the quality of its

food and its manufacturing facilities. For example, Menu Foods touts the claim that it

"manufacture[s] the private-label wet pet-food industry's most comprehensive product program

with the highest standards of quality" and it operates "state-of-the-art" manufacturing facilities in

the United States and Canada.

45.    Members of the Class were induced by Defendants' labeling, advertising and

marketing the contaminated brands of pet food as "food" to rely upon said express warranty, and

did so rely in purchasing the contaminated brands of pet food and feeding them to their pets.

46.    In reliance on Defendants' untrue warranties, Plaintiff and the Class purchased the contaminated pet food and fed that food to their pets.

47.    Plaintiff and members of the Class sustained damages as a proximate result of said breach of warranty.

## COUNT II
## BREACH OF IMPLIED WARRANTY
## OF MERCHANTABILITY

48.    Plaintiff incorporates by reference the preceding paragraphs as if they were fully set forth herein.

49.    Defendants are merchants pursuant to sections 2-104 and 2-314 of the Uniform Commercial Code with respect to pet foods.

50.    Through Defendants' marketing, labeling, and sales, Defendants impliedly warranted that the contaminated pet food, which was sold to Plaintiff and Class members and fed to their pets, was fit for the ordinary purpose for which it was intended, namely, to safely feed and nourish pets without any resulting negative health effects, pursuant to section 2-314 of the Uniform Commercial Code.

51.    Through Defendants' marketing, labeling, and sales, Defendants knew that Plaintiff and Class members would purchase the contaminated pet food at issue for the ordinary purpose of feeding their pets.

52.    Defendants manufactured, labeled, advertised, sold, and distributed the contaminated pet foods at issue for the ordinary purpose for which it was purchased by Plaintiff.

53.    Plaintiff and Class members purchased and used the contaminated pet foods for the ordinary purposes for which such goods are sold, namely feeding them to their pets.

11

54.    Plaintiff and Class members relied upon Defendants' representations and claims in purchasing the contaminated pet foods.

55.    The contaminated pet foods purchased by Plaintiff and Class members were unfit for their ordinary purpose when sold. In fact, such pet foods were contaminated and caused severe illness and/or death of the pets that consumed them. Therefore, Defendants breached the implied warranty of merchantability in the sale of the contaminated pet foods at issue.

56.    Plaintiff and members of the Class sustained damages as a proximate result of said breach of warranty.

## COUNT III
## NEGLIGENCE

57.    Plaintiff incorporates by reference the preceding paragraphs as if they were fully set forth herein.

58.    Defendants owed a duty to pet owners who purchased its products to ensure that their pet food was safe for pets to consume and free from contamination, such that no pets consuming these products would be injured or die as a result of such consumption.

59.    Defendants breached said duty as described herein above when they failed to adhere to proper safety standards and failed to properly ensure the safety of their products when they sold contaminated pet food, proximately causing damage to Plaintiff and members of the Class.

60.    As a proximate result of the Defendants' conduct described herein, Plaintiff and members of the Class have suffered damages as a result and continue to suffer damages as a result of the contamination of Defendants' pet food.

## COUNT IV
## UNJUST ENRICHMENT

12

61.     Plaintiff incorporates by reference the preceding paragraphs as if they were fully set forth herein.

62.     As a direct, proximate, and foreseeable result of Defendants' acts and otherwise wrongful conduct, Plaintiff suffered damages. Defendants profited and benefited from the sale of their pet food, even as the pet food caused Plaintiff to incur damages.

63.     Defendants have voluntarily accepted and retained these profits and benefits, derived from consumers, including Plaintiff, with full knowledge and awareness that, as a result of Defendants' unconscionable wrongdoing, consumers, including Plaintiff, were not receiving products of the quality, nature, fitness, or value that had been represented by Defendants or that reasonable consumers expected. Plaintiff purchased pet food that she expected would be safe and healthy for her pet and instead has had to now endure the illness of her beloved pet.

64.     By virtue of the wrongdoing alleged in this Complaint, Defendants have been unjustly enriched at the expense of the Plaintiff who is entitled to, and hereby seeks, the disgorgement and restitution of Defendants' wrongful profits, revenue, and benefits, to the extent, and in the amount, deemed appropriate by the Court.

### COUNT V
### VIOLATION OF NEW JERSEY'S CONSUMER FRAUD ACT
### N.J.S.A. 56:8-1, *et seq.*

65.     Plaintiff incorporates by reference the preceding paragraphs as if they were fully set forth herein.

66.     Defendants are the researchers, developers, designers, testers, manufacturers, inspectors, labelers, distributors, marketers, promoters, and sellers and/or otherwise released the contaminated pet food into the stream of commerce.

67.     Defendants knew or should have known that the use of the contaminated pet food

13

causes serious and life threatening injuries to animals, but failed to warn the public, including Plaintiff, of same.

68.    In violation of the New Jersey Consumer Fraud Act, Defendants made untrue, deceptive or misleading representations of material facts to, and omitted and/or concealed material facts from Plaintiff and the Class.

69.    Defendants' statements and omissions were undertaken with the intent that consumers, including Plaintiff, would rely on Defendants statements and/or omissions.

70.    The promotion and release of the contaminated pet food into the stream of commerce constitutes an unconscionable commercial practice, deception, false pretense, misrepresentation, and/or knowing concealment, suppression, or omission of material facts with the intent that others would rely upon such concealment, suppression or omission in connection with the sale or advertisement of such merchandise or services by Defendants, in violation of the New Jersey Consumer Fraud Act, N.J.S.A. 56:8-1 *et seq.*

71.    Defendants concealed, omitted, or minimized the side effects of the contaminated pet food, provided misinformation about risks and potential harms from the contaminated pet food, and succeeded in persuading consumers to purchase for approved use the contaminated pet food.

72.    Defendants' practice of promoting and marketing contaminated pet food created and reinforced a false impression as to the safety of the contaminated pet food, thereby placing pets at risk of serious injuries and potentially lethal side effects.

73.    Defendants intended that others would rely upon its concealment, suppression or omission of the risk of animals ingesting the contaminated pet food.

74.    Defendants' actions in connection with manufacturing, distributing, and

14

marketing the contaminated pet food as set forth herein evidence a lack of good faith, honesty in

fact and observance of fair dealing so as to constitute unconscionable commercial practices, in

violation of the New Jersey Consumer Fraud Act, N.J.S.A., 56:8-1 *et seq.*

75.    Defendants acted willfully, knowingly, intentionally, unconscionably and with

reckless indifference when committing these acts of consumer fraud.

76.    As a direct and proximate result of the acts of consumer fraud set forth above,

Plaintiff purchased unsafe products and incurred monetary expense, risk and injury to their pets

previously set forth herein.

## JURY DEMAND

Plaintiff hereby requests a trial by jury on all issues triable by right before a jury.

## PRAYER FOR RELIEF

THEREFORE, Plaintiff prays for judgment as follows:

1.    That this Court certify this action as a Class action pursuant to Federal Rule of

Civil Procedure 23(a) and (b)(3), and appoint Plaintiff and her counsel to

represent the Class;

2.    That this Court enter judgment and award damages in favor of Plaintiff and the

Class, and against Defendants under the theories alleged herein;

3.    That this Court award Plaintiff all attorneys' fees, expenses and costs of this suit;

4.    That this Court award Plaintiff pre-judgment and post-judgment interest at the

maximum rate allowable by law, compounded daily; and

15

5.   That this Court grant such other, further, and different relief that the Court deems

necessary, just, and proper.


Dated: April 3, 2007


                                        Respectfully submitted,


                                        Gary S. Graifman, Esquire

                                        *s/ Gary S. Graifman*
                                        Kantrowitz, Goldhamer & Graifman
                                        210 Summit Avenue
                                        Montvale, New Jersey 07645
                                        Telephone: (201) 391-7000
                                        Facsimile: (201) 307-1086


                                        Gary E. Mason
                                        Donna F. Solen
                                        The Mason Law Firm, L.L.P.
                                        1225 19th Street, NW
                                        Suite 500
                                        Washington, D.C. 20036
                                        Telephone:  (202) 429-2290
                                        Facsimile:   (202) 429-2294

                                        Robert Kaplan
                                        Linda P. Nussbaum
                                        Christine M. Fox
                                        Kaplan Fox & Kilsheimer LLP
                                        805 Third Avenue, 22nd Floor
                                        New York, NY 10022
                                        Telephone:  (212) 687-1980
                                        Facsimile:  (212) 687-7714

                                        Laurence D. King
                                        Kaplan Fox & Kilsheimer LLP
                                        555 Montgomery Street, Suite 1501
                                        San Francisco, California 94111

Telephone: (415) 772-4700
Facsimile: (415) 772-4707

Jeffrey A. Wigodsky, Esquire
Karp, Frosh, Lapidus, Wigodsky & Norwind, P.A.
1133 Connecticut Ave., N.W.
Suite 250
Washington, D.C. 20036
Telephone: (202) 822-3777
Facsimile: (202) 822-9722

Todd M. Schneider
Schneider & Wallace
180 Montgomery Street, Suite 2000
San Francisco, CA 94104
Telephone: (415) 421-7100
Facsimile: (415) 421-7105

Joseph M. Vanek
Vanek, Vickers & Masini P.C.
111 S. Wacker Drive, Suite 4050
Chicago, IL. 60606
Telephone: (312) 224-1500
Facsimile: (312) 224-1510

Attorneys for Plaintiff and the Class

# EXHIBIT A

Menu Foods Income Fund - Annual General Meeting                    Page 1 of 2

# MENU FOODS INCOME FUND





Home

Recall Information

Press Release

Cat Product Information

Dog Product Information

FAQ's for Consumers

## Recalled Cat Product Information
### Recall Information 1-866-895-2708

Menu Foo
8 Falcone:
Streetsvill
Canada L!

Variety or Multi-Packs:

If you are in possession of a variety or multi-pack, please be sure to check the individual can or pouch rather than relying solely on the date coding on the side of the carton.

1.  Americas Choice, Preferred Pets
2.  Authority
3.  Best Choice
4.  Companion
5.  Compliments
6.  Demoulas Market Basket
7.  Eukanuba
8.  Fine Feline Cat
9.  Food Lion
10. Foodtown
11. Giant Companion
12. Hannaford
13. Hill Country Fare
14. Hy-Vee
15. Iams
16. Laura Lynn
17. Li'l Red
18. Loving Meals
19. Meijer's Main Choice
20. Nutriplan
21. Nutro Max Gourmet Classics
22. Nutro Natural Choice
23. Paws
24. Pet Pride
25. Presidents Choice
26. Price Chopper
27. Priority US
28. Save-A-Lot Special Blend
29. Schnucks
30. Science Diet Feline Savory Cuts Cans
31. Sophistacat

32.  Special Kitty Canada
33.  Special Kitty US
34.  Springfield Prize
35.  Sprout
36.  Stop & Shop Companion
37.  Tops Companion
38.  Wegmans
39.  Weis Total Pet
40.  Western Family US
41.  White Rose
42.  Winn Dixie

© Copyright 2006, Menu Foods Income Fund, All Rights Reserved.
Best viewed using Internet Explorer.

# MENU FOODS INCOME FUND




Home

**Recall Information**

Press Release

Cat Product Information

Dog Product Information
FAQ's for Consumers



Menu Foo
8 Falcono
Streetsvill
Canada L!

## Recalled Dog Product Information
### Recall Information 1-866-895-2708

Variety or Multi-Packs:

If you are in possession of a variety or multi-pack, please be sure to check the individual can or pouch rather than relying solely on the date coding on the side of the carton.

1. Americas Choice, Preferred Pets
2. Authority
3. Award
4. Best Choice
5. Big Bet
6. Big Red
7. Bloom
8. Cadillac
9. Companion
10. Demoulas Market Basket
11. Eukanuba
12. Food Lion
13. Giant Companion
14. Great Choice
15. Hannaford
16. Hill Country Fare
17. Hy-Vee
18. Iams
19. Laura Lynn
20. Loving Meals
21. Meijers Main Choice
22. Mighty Dog Pouch
23. Mixables
24. Nutriplan
25. Nutro Max
26. Nutro Natural Choice
27. Nutro Ultra
28. Nutro
29. Ol'Roy Canada
30. Ol'Roy US
31. Paws

32. Pet Essentials
33. Pet Pride - Good n Meaty
34. Presidents Choice
35. Price Chopper
36. Priority Canada
37. Priority US
38. Publix
39. Roche Brothers
40. Save-A-Lot Choice Morsels
41. Schnucks
42. Shep Dog
43. Springsfield Prize
44. Sprout
45. Stater Brothers
46. Stop & Shop Companion
47. Tops Companion
48. Wegmans Bruiser
49. Weis Total Pet
50. Western Family US
51. White Rose
52. Winn Dixie
53. Your Pet

© Copyright 2006, Menu Foods Income Fund, All Rights Reserved.
Best viewed using Internet Explorer.



FILED
LODGED
RECEIVED

MAIL

APR 19 2007

AT SEATTLE
CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
BY                              DEPUTY

## BEFORE THE JUDICIAL PANEL
## ON MULTIDISTRICT LITIGATION

IN RE PET FOOD PRODUCTS
LIABILITY LITIGATION

MDL Docket No. 1850

I, Bonney S. McCormack, declare under penalty of perjury that the following facts are

true and correct:

I am a citizen of the United States, over the age of 18 years, and not a party to or

interested in the within-entitled cause. I am an employee of Hagens Berman Sobol Shapiro LLP

and my business address is 1301 Fifth Avenue, Suite 2900, Seattle, Washington 98101.

On April 18, 2007 I caused the following documents to be served upon the parties and

courts named below in the manner indicated:

**Memorandum of Plaintiffs Whaley, et al. In Opposition to Motions for Transfer and**

**Consolidation of Related Actions Submitted by Plaintiffs Sexton and Toriano.**

## VIA MAIL

### DEFENDANTS

Menu Foods
8 Falconer Drive
Streetsville, ON

The Iams Company
One Proctor & Gamble Plaza C-2
Cincinnati, Ohio 45202

- 1
Case No.

001958-11  165813 V1

1  Canada L5N 1B1

2  Menu Foods                                    Eukanuba
   8 Falconer Drive                              One Proctor & Gamble Plaza C-2
3  Streetsville, ON                              Cincinnati, Ohio  45202
   Canada L5N 1B1

4

5  Menu Foods, Inc.                              Menu Foods Midwest Corporation
   c/o The Corporation Trust Company             c/o The Corporation Trust Company
6  820 Bear Tavern Road                          Corporation Trust Center
   West Trenton, NJ  08628                       1209 Orange Street
                                                 Wilmington, DE  19801
7

8  Menu Foods Midwest Corporation                Menu Foods Limited Partnership
   c/o The Corporation Trust Company             c/o The Corporation Trust Company
9  Corporation Trust Center                      Corporation Trust Center
   1209 Orange Street                            1209 Orange Street
   Wilmington, DE  19801                         Wilmington, DE  19801
10

11 Menu Foods Midwest Corporation                Menu Foods Limited Partnership
   c/o The Corporation Trust Company             c/o The Corporation Trust Company
12 Corporation Trust Center                      Corporation Trust Center
   1209 Orange Street                            1209 Orange Street
   Wilmington, DE  19801                         Wilmington, DE  19801
13

14 Menu Foods Gen Par Limited                    Wal-Mart Stores, Inc.
   c/o The Corporation Trust Company             c/o The Corporation Company
15 Corporation Trust Center                      1209 Orange St.
   1209 Orange Street                            Wilmington, DE  19801-1120
16 Wilmington, DE 19801

17 ### OTHER PLAINTIFFS' COUNSEL IN THESE ACTIONS

18 **Counsel for Plaintiffs in the _Sims_ Action:**   **Counsel for Plaintiffs in the _Schneider, and Workman, et al_ Actions:**

19 Jason M. Hatfield
   LUNDY & DAVIS, LLP                            Donna Siegel Moffa
20 300 North College Ave., Suite 309             TRUJILLO, RODRIGUEZ & RICHARDS, llp
   Fayetteville, AR  72701                       8 Kings Highway West
                                                 Haddonfield, NJ  08033
21

22 **Counsel for Plaintiffs in the _Scott, et al._ Action:**   **Counsel for Plaintiffs in the _Workman et al._ Action:**

23 Jeremy Young Hutchinson
   PATTON, ROBERTS, McWILLIAMS &                 Sherrie R. Savett
24 CAPSHAW                                       BERGER & MONTAGUE, P.C.
   111 Center Street, Suite 1315                 1622 Locust Street
25 Little Rock, AR  72201                        Philadelphia, PA  19103

26

   - 2
   Case No.

   001958-11 165813 V1

1

**Counsel for Plaintiffs in the *Scott, et al.* Action:**

2

Richard Adams

3
PATTON, ROBERTS, WILLIAMS
& CAPSHAW

4
Century Bank Plaza, Suite 400
P.O. Box 6128

5
Texarkana, TX 75505-6128

6

**Counsel for Plaintiffs in the *Toriano* Action:**

7
Paul J. Geller
LERACH COUGHLIN STOIA

8
GELLER RUDMAN & ROBBINS LLP
120 E. Palmetto Park Road, Suite 500

9
Boca Raton, FL 33432-4809

10

**Counsel for Plaintiffs in the *Workman et al.* Action:**

11

Lawrence Kopelman

12
KOPELMAN & BLANKMAN
350 E. Las Olas Blvd., Suite 980

13
Ft. Lauderdale, FL 33301

14

**Counsel for Plaintiff in the *Holt* Action:**

15
A. James Andrews
Nicole Bass

16
905 Locust Street
Knoxville, TN 37902

17

18

**Counsel for Plaintiff in the *Majerczyk***

19
Jay Edelson
BLIM & EDELSON, LLC

20
53 West Jackson Blvd., Suite 1642
Chicago, IL 60604

21

22

**Counsel for Plaintiffs in the *Suggett, et al.* Action:**

23

Adam P. Karp, Esq.

24
ANIMAL LAW OFFICES
114 W. Magnolia St., Suite 425

25
Bellingham, WA 98225

26


**Counsel for Plaintiffs in the *Workman et al.* Action:**

Robert A. Rovner
ROVNER, ALLEN, ROVNER,
ZIMMERMAN & NASH
175 Bustleton Pike
Feasterville, PA 19053-6456


**Counsel for Plaintiff in the *Holt* Action:**

Perry A. Craft
CRAFT & SHEPPARD
214 Centerview Dr., Suite 233
Brentwood, TN 37027


D. Jeffrey Ireland
FARUKI, IRELAND & COX,
500 Courthouse Plaza S.W.
10 North Ludlow Street
Dayton, OH 45402


**Counsel for Plaintiffs in the *Whaley, Heller, et al.* and *Kornelius, et al.* Actions:**

Michael David Myers
MYERS & COMPANY
1809 7th Ave., Suite 700
Seattle, WA 98101


**Counsel for Plaintiffs in the *Johnson, et al.* Action:**

Mr. Philip H. Gordon
Gordon Law Offices
623 West Hays St.
Boise, ID 83702


**Counsel for Plaintiff in the *Sexton* Action:**

Kenneth A. Wexler
WEXLER TORISEVA WALLACE
1610 Arden Way, Suite 290
Sacramento, CA 95815


- 3
Case No.

**Counsel for Plaintiffs in the *Osborne* Action:**

| | |
|---|---|
| Bruce E. Newman<br>NEWMAN, CREED & ASSOCIATES<br>99 North Street, Route 6<br>P. O. Box 575<br>Bristol, CT 06011-0575 | KERSHAW, CUTTER & RATINOFF,<br>980 9th Street, 19th Floor<br>Sacramento, California 95814 |

**Counsel for Plaintiffs in the *Toriano* Actin:**

Stuart A. Davidson
LERACH, COUGHLIN STOIA GELLER
RUDMAN & ROBBINS
120 East Palmetto Park Road, Suite 500
Boca Raton, FK 33432-4809

**Counsel for Plaintiffs in the *Pittsonberger et al.* Action**

Christine M. Fox
KAPLAN FOX & KILSHEIMER LLP
805 Third Avenue
New York, NY 10022

## COURTS

| | |
|---|---|
| Clerk of Court<br>U.S. District Court<br>Western District of Washington<br>700 Stewart Street<br>Seattle, WA 98101 | Clerk of Court<br>Southern District of Florida<br>299 E. Broward Blvd., Suite 108<br>Fort Lauderdale, FL 33301 |
| Clerk of Court<br>U.S. District Court<br>Western District of Arkansas<br>35 E. Mountain Street, Suite 510<br>Fayetteville, AR 72701-5354 | Clerk of Court<br>Eastern District of Tennessee<br>800 Market Street, Suite 130<br>Knoxville, TN 37902 |
| Clerk of Court<br>U.S. District Court<br>District of New Jersey<br>4th & Cooper Streets, Suite 1050<br>Camden, NJ 08101 | Clerk of Court<br>Northern District of Illinois<br>209 S. Dearborn Street<br>Chicago, Il 60604 |
| Clerk of Court<br>District of Connecticut<br>450 Main<br>Hartford, CT 06103 | Clerk of Court<br>Central District of California<br>312 N. Spring St., Room G-8<br>Los Angeles, CA 90012 |

Attorneys for Plaintiff

Executed on April 18, 2007 at Seattle, Washington.

Bonney S. McCormack
Paralegal

- 4
Case No.

001958-11 165813 V1